## ROGERS v. MARLBORO COUNTY.

1. A warrant for the arrest of a person charged with a failure to pay his poll tax, which is a misdemeanor, is not a process for the collection of a tax, within the meaning of section 172 of the General Statutes, which declares that no costs shall be allowed, except where the taxes are actually collected.   For searches made under such warrant the County is liable to the sheriff for his costs.
2. If the provision making the non-payment of the poll tax a misdemeanor be limited to the year to which the tax act was limited—but a like provision occurs in all the annual tax acts—still the sheriff would be entitled to his costs on warrants issued and placed in his hands by the proper officer.
3. The act of 1884 (18 Stat., 736), which forbids *nulla bona* costs to

sheriffs on judgments or executions in the Courts of General Sessions, does not apply to this case, where warrants were issued by a trial justice for the non-payment of the poll tax, and the defendants could not be found within the county—because (1) the cases were not in the Court of General Sessions ; (2) no judgments have been entered or executions issued ; and (3) the costs claimed are not *nulla bona* costs.

4. The costs here claimed are expressly given by section 622 of the General Statutes, which is not repealed directly or by implication by the act of 1884, *supra*.

5. The act provides a punishment for those residents of the county who fail and refuse to pay the poll tax ; the affidavit and warrant alleged only a neglect to pay, and did not state that defendants were residents of the county. *Held*, that the offence was plainly and substantially set forth, and that is all that the law requires in the affidavit and warrant.

6. Whether warrants put into a sheriff's hands are regular or irregular, it is his duty to execute them.

Mr. Justice McGowan, *dissenting*.

Before Norton, J., Marlboro, June, 1889.

The case is fully stated by Mr. Justice McGowan in his dissenting opinion as follows :

"This is an appeal from the decision of the county commissioners of Marlboro, refusing to audit as a county claim an account of the sheriff of the said county (B. A. Rogers) for costs, which he claimed the county was liable for to him. The case arose in this way : The auditor of the county returned to the treasurer the names of 260 poll tax defaulters, by authority of the following instructions from the comptroller general, viz. : 'In cases where parties are charged with a simple poll, and they possess no other property, county treasurer will at once place the said delinquent polls in the hands of a trial justice, as has heretofore been the custom. Where executions have heretofore been issued against said simple poll tax payers, the treasurer will recall such executions and turn them over to a trial justice for prosecution,' &c. The treasurer thereupon went before a trial justice and had issued 260 warrants against the said defaulters and lodged said warrants for service with the sheriff of the county. The warrants were in simple form, charging the party named that he, A. B., 'did neglect to pay poll tax due November, 1888,'

and were sworn to. The sheriff made search on a number of the warrants and returned '*Non est inventus*' on those covered by the account rendered—a number of the defendants having removed from the county.

"The sheriff made out his claim for 'search,' 'mileage,' and 'entry' on seventy warrants, in which the defendants could not be found, which amounted to the aggregate of $276.95. This bill he presented for payment to the board of county commissioners, which refused to audit the claim, upon the ground that the county was not liable for the costs and fees, as it was for the collection of a tax, and that said warrants were illegal and void. The sheriff appealed to the Circuit Court, and his honor, Judge Norton, reversed the decision of the county commissioners, and adjudged that the account was a valid claim against the county. From this order the county appeals to this court upon the following grounds: '1. Because his honor erred in holding that the county was liable for the fees charged where no tax was collected. 2. Because his honor erred in not holding that fees for the actual collection of taxes only should be allowed. 3. Because the warrants were irregular and illegally issued.'"

*Mr. T. W. Bouchier*, for appellant.

*Mr. Knox Livingston*, contra.

April 19, 1890. The opinion of the court was delivered by

Mr. Justice McIver. It seems to me very clear that the warrants which constitute the basis of the plaintiff's claim cannot properly be regarded as process for the collection of taxes, and hence section 172 of General Statutes has no application to the case. These warrants were not issued for the purpose of enforcing the payment of the poll taxes, but, on the contrary, for the purpose of *punishing* the delinquent taxpayer for failure to perform a high public duty—the performance of which is absolutely essential to the administration of the government. They constitute, therefore, both in form and essence, criminal process, and stand upon precisely the same footing as a warrant for assault and battery, or any other misdemeanor cognizable by a

trial justice. The express terms of the statute (1887, 19 Stat., 882–3) show this beyond all dispute: "Should any person fail or refuse to pay said poll tax, he shall be deemed guilty of a misdemeanor, and on conviction thereof before any trial justice or other court having jurisdiction of the same, shall be punished by a fine which shall not exceed ten dollars, together with the costs of said suit, or by imprisonment in the county jail for a term not exceeding thirty days." This shows that the intent of the legislature was to make the failure or refusal to pay the poll tax, a criminal offence—a "*misdemeanor*"—and that the person convicted of such offence shall be "punished" by fine or imprisonment within the limits prescribed. How this can be regarded as a proceeding for the collection of a tax, I cannot conceive. The poll tax is limited by the constitution (art. IX., sec. 2) to one dollar, and yet under this act the party convicted may be punished by a fine of ten dollars, or may be imprisoned for a term of thirty days; and it seems to me that it would be altogether anomalous—to use no stronger term—to suppose that the legislature provided for the collection of a tax of one dollar by the imposition of a fine of ten dollars or imprisonment for thirty days.

It is said, however, that this was only a temporary provision, for a year only, found only in the act to raise supplies for the year specified therein. Granting this to be so, we do not see how it could possibly alter the character of the process by converting it from a criminal proceeding into a process for the collection of taxes. It may be possible, though we do not say that such would be the effect, that this act, expiring by its own limitation with the year for which it was enacted, would afford no sufficient basis for a prosecution after it had expired; but even if that were so, I do not see how it could affect the present inquiry. The fact that a prosecution may fail because the act under which it is instituted has expired or been repealed before the prosecution was commenced, certainly cannot affect the right of the sheriff to his costs. When a warrant is placed in his hands by proper authority, his duty is to execute it, or attempt to do so. It is no part of his duty to inquire whether the prosecution is well founded, either in law or fact, and it would be impertinent

in him to do so. But, in addition to this, I find that a similar provision to the one under which these warrants were issued has been incorporated in every tax act passed since 1877 to the present time, and therefore it is a mistake to speak of it as a mere temporary provision ; but, on the contrary, it seems to be a part of the settled policy of the State to make the failure or refusal to pay the poll tax a misdemeanor, punishable as a criminal offence by fine or imprisonment.

But it is contended that even if these warrants must be regarded as the commencement of criminal proceedings, and not as process for the collection of taxes, yet the sheriff would not be entitled to costs under the provisions of the act of 1884 (18 Stat., 736), which reads as follows : "That in no case where there shall have been, or shall hereafter be, entry of judgment or issuing of execution in the Courts of General Sessions by the clerk thereof against defendants in said courts for fines, fees, or costs taxed and due upon the prosecution of said defendants, shall *nulla bona* costs be paid to the clerk or sheriff thereon by the county commissioners or county treasurers of the county in which such judgment may have been, or shall hereafter be, entered." But this act can have no application to the present case for several reasons : 1st. By its express terms it applies only to cases in the "Courts of General Sessions," and these cases did not originate there, nor were they ever carried into that court. 2d. The act applies only to cases in which judgments have been entered or executions have been issued, and in this case no judgments have been entered and no executions have been issued, nor could they have been. 3d. The act applies only to *nulla bona* costs, and the costs here claimed are not of that character. It may be that the reason of this provision was, that it was supposed that if the sheriff and clerk were deprived of the right to collect *nulla bona* costs from the county, they would thereby be stimulated to greater activity and more earnest efforts to make the defendants pay ; but this reason would have no application to a case like the present, for here no liability has yet been fixed upon the defendants—no judgments have been entered, and no executions have been issued, for the reason that they have not been brought before the

court, have not been made parties—because they could not be found.

In order to apply the provisions of the act of 1884 to the present case it would be necessary to strain its terms to such an extent as I do not think this court would be warranted in doing, especially when the effect would be to deprive a public officer of the costs fixed by law for performing services which he is required to render under heavy penalties. But what is conclusive to my mind is, that the sheriff, under the express provisions of section 622 of the General Statutes, was entitled to demand from the county the payment of his costs in these cases, and this section is not repealed by the act of 1884, for there is no allusion to it whatever in that act, nor are its terms in any way inconsistent with the provisions of the act of 1884.

Under this view of the case it becomes necessary to consider appellants' third ground of appeal, which is in these words : "Because the warrants were irregular and illegally issued." The only defect in the warrants, as we learn from the argument, is that both in the affidavit and the warrant the charge is that the defendant "did neglect to pay poll tax," whereas it is contended that the charge should have been in the language of the act, that defendant did fail and refuse to pay, and that there is no statement, either in affidavit or warrant, that defendants were residents of the county, and, as such, liable to pay the poll tax. Now, even granting that such deficiencies in an indictment would be fatal on a motion in arrest of judgment, I have always understood that no deficiency in the form of the warrant by which a criminal prosecution is commenced, would have such effect. The constitution (art. I., sec. 22) simply provides that a warrant shall be supported by oath or affirmation, and shall be issued with the formalities prescribed by law, and the law prescribes in section 830 of the General Statutes that a criminal proceeding before a trial justice "shall be commenced on information, under oath, plainly and substantially setting forth the offence charged, upon which, and only which, shall a warrant of arrest issue" ; and, so far as I am informed, these are the only formalities prescribed by law for the issuing of warrants by a trial justice, for the purpose of commencing criminal proceedings. It is very manifest

that the offence charged in these cases was plainly and substantially set forth, both in the affidavits and the warrant. So that it does not seem to me that there was any defect in the warrants.

But even granting that there was, that would not relieve the sheriff from the duty of executing them. It was no part of his office or duty to determine whether the warrants were regular or irregular. As is well said by Mr. Justice McGowan in *Bragg* v. *Thompson* (19 S. C., at page 576): "The sheriff is a ministerial officer. He is neither judge nor lawyer. It is not his duty to supervise and correct judicial proceedings; but being an officer of court, ministerial in character, he cannot impugn its authority nor inquire into the regularity of its proceedings. His duty is to obey. This principle applies alike to him, whether the execution issues from a court of general or limited jurisdiction."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCGOWAN, *dissenting* [omitting his statement of the case, which has been given *supra*]. Costs are purely statutory. As a rule, no one can recover them unless he can lay his finger upon the law which authorizes it. This applies with special force where the parties concerned are unable to pay costs, or. have left the country, and it is sought to charge the State or the county with the costs. Section 172, General Statutes, provides as follows: "Fees for the actual collection of taxes only shall be allowed, and no costs or expenses shall be paid by the county or the State on any execution issued or hereafter to be issued, and returned *nulla bona.*" Afterwards, in 1884 (18 Stat., 736), the legislature passed an act, which declares "that in no case when there shall have been, or shall hereafter be, entry of judgment or issuing of execution in the Courts of General Sessions, by the clerk thereof, against defendants in said courts for fines, fees, or costs taxed and due upon the prosecution of said defendants, shall *nulla bona* costs be paid to the clerk or sheriff therein by the county commissioners or county treasurer, in which such judgments may have been or shall hereafter be entered," &c. In 1887 (19 Stat., 882), the legislature passed another act in relation

36 -32

to the "collection of taxes," which authorized the county treas-urer to issue "a warrant or execution" against a defaulting tax payer, including school, county, and special taxes, under which the sheriff was directed to sell the property of the defaulter, tak-ing "from such defaulter" certain specified costs for his services, but making no provision whatever for any costs which could not be made out of "such defaulter."

It seems therefore clear that, up to this time (1887), the "war-rant or execution" issued by the treasurer to collect taxes, in-cluding taxes of all kinds due by the defaulter, whether for land, personal property, or his poll. They were all embraced in the same "execution," and were collected at the same time and in the same manner. But in February, 1889, the comptroller gen-eral issued his circular, above cited, requiring the delinquent polls to be placed in the hands of a trial justice, to proceed against the defaulter as for a misdemeanor. Under this authority, and in conformity with the act upon the subject, the warrants were issued, which the sheriff returned *"non est inventus ;"* and the question now is, whether the county is liable for the sheriff's costs in making "searches" for the parties and returns that they could not be found.

It is urged that section 172 of the General Statutes (cited above), which disallows *nulla bona* costs in collecting taxes, was only intended to apply to "executions" for the recovery of taxes on property. If we assume that it refers expressly to "execu-tions," we do not think it follows that poll taxes were thereby excepted. On the contrary, at the time the act was passed, those "executions" referred to included and enforced payment of poll taxes, as well as of property taxes. No discrimination was made as to the poll tax element in them; and we are at a loss to find any authority for the view taken that the act was intended only to apply to a property tax.

It is, however, further contended that, by issuing warrants against parties charged with a simple poll, the proceeding was changed from one civil in character to a criminal proceeding, and therefore the county commissioners were bound to pay for the services rendered by the sheriff, as in other criminal cases, where costs are not collected from the defendants. The change made

in the form of the proceeding was not by authority of a permanent law, but in the annual act to raise supplies; and we incline to think that in its new form—given for a year only—it was still substantially a proceeding for the collection of poll taxes. But if we assume that by the change of form it became a regular criminal proceeding, we do not see how the respondent can escape the force and effect of the act of 1884, above cited, which expressly declares that neither the county commissioners nor the county treasurer shall pay to the clerk or sheriff any *nulla bona* costs in the Court of General Sessions, when the defendant is charged and the costs taxed against him, but he is unable to pay the same. It seems to me that the case is much stronger where, the defendants being out of the county, the return is *"non est inventus."* The question is not whether the sheriff should be deprived of compensation for his services, but whether under the law—especially the act of 1884—the county is chargeable therewith.

Judgment affirmed.